IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DANIEL BERHE ABRAHA, | ) | CASE NO. 1:19CV44 |
| | ) | |
| Petitioner, | ) | JUDGE SARA LIOI |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| MATT WHITAKER, | ) | |
| | ) | **REPORT AND RECOMMENDA-** |
| Respondent. | ) | **TION RE RESPONDENT MATT** |
| | ) | **WHITAKER'S MOTION TO DIS-** |
| | ) | **MISS HABEAS CORPUS PETITION** |

**I.**

Through his habeas corpus petition under 28 U.S.C. § 2241,[1] Daniel Berhe Abraha sought release from the Northeast Ohio Correctional Center where United States Immigration and Customs Enforcement officials were holding him in custody pending his removal from the United States to Eritrea. On October 10, 2019, the government moved to dismiss the petition pursuant to Fed. R. Civ. P. 12(b)(1).[2] Abraha has not opposed this motion, and the 30-day window for doing so has closed.

On February 4, 2019, the District Court referred this case to me for a report and recommended decision.[3] Because Abraha is no longer in custody of the federal

---

[1] ECF #1.
[2] ECF #9.
[3] ECF #4.

1

government and for the reasons explained more fully below, I recommend that the government's motion to dismiss Abraha's petition be granted.

## II.

*Abraha's presence in the United States.* On December 5, 2017, ICE took Abraha into its custody when he arrived at the Hidalgo, Texas Port of Entry and applied for admission into the United States.[4] Abraha is a citizen of Eritrea,[5] a country of roughly 5.97 million inhabitants situated in the Horn of Africa bordered by Sudan in the west, Ethiopia in the south, Djibouti in the southeast, and the Red Sea along the country's east coastline. Saudi Arabia and Yemen are Eritrea's neighboring countries on the other side of the Red Sea.[6]

Abraha appeared at the United States border without required documents. The asylum officer handling his case found that Abraha had demonstrated a credible fear of persecution or torture.[7] The supervisory asylum officer ordered Abraha, who remained in custody, to appear before an immigration judge in Cleveland, Ohio.[8] On July 2, 2018, Immigration Judge David C. Whipple denied Abraha's request for asylum, and ordered him removed from the United States to Eritrea.[9] Abraha and the government waived appellate rights at the Immigration Court proceeding.[10] Abraha remained in custody while

---

[4] ECF #7-1, at 1.
[5] ECF #7-2, at 1.
[6] *See* https://www.cia.gov/library/publications/the-world-factbook/geos/print_er.html.
[7] ECF #7-2, at 1.
[8] *Id.*
[9] ECF #7-3.
[10] *Id.*

ICE tried to obtain travel documents from the government of Eritrea so that Abraha could be returned to Eritrea.[11]

***Abraha's Efforts to Leave Detention.*** After being in ICE detention for slightly more than one year, Abraha filed a pro se petition for a writ of habeas corpus against Matthew G. Whitaker, the former Acting Attorney General of the United States.[12] Abraha sets forth three counts alleging that his ongoing detention violates the Immigration and Naturalization Act and its interim regulations, constitutes a substantive due process violation, and constitutes a procedural due process violation.[13] Abraha's prayer for relief seeks essentially one thing: release from the Northeast Ohio Correctional Center.[14] He confirms that he does not challenge the validity of his deportation order.[15] He even specifies in his petition a Dallas, Texas street address of a relative he would stay with if released prior to deportation.[16]

The government challenges the petition by arguing "there is a significant likelihood of [Abraha's] removal in the reasonably foreseeable future."[17] On two separate occasions before when it extended his detention, the government told Abraha the same thing—that it foresaw "a significant likelihood of removal."[18] This was therefore the third time the government was contending that Abraha's removal was "significantly likely to occur in the

---

[11] ECF #7-4 and 7-5.
[12] ECF #1.
[13] *Id.* at 8-9.
[14] *Id.* at 10.
[15] *Id.* at 5.
[16] *Id.*
[17] ECF #7, at 3.
[18] ECF #7-4; ECF #7-5.

3

reasonably foreseeable future"[19] Citing *Zadvydas v. Davis*,[20] the government argues that a six-month delay is presumptively reasonable, but acknowledged that that six-month period ended on December 29, 2018 or about a week before Abraha filed his petition.[21] The government also challenges the fact that Abraha filed his petition against a former acting attorney general when in fact he should have filed his petition against the person who has custody over him.[22] The government identifies the proper respondent by title only: "The Department of Homeland Security (DHS), Immigration and Customs Enforcement (ICE), Enforcement and Removal Operations (ERO) Field Office Director."[23]

In response, Abraha contends the government abused its power to detain aliens.[24] In words that appear to have come to fruition, Abraha stated, "Respondent knows that the Eritrean consulate does not give travel documents."[25] Abraha never amended his petition to name the correct respondent.

On June 19, 2019, ICE released Abraha from custody, and placed him on supervision pending deportation.[26] Apparently unsuccessful in its own attempts to obtain travel documents from the Eritrean government, ICE informed Abraha that he was "required by law to continue to make good faith efforts to secure a travel document on your

---

[19] ECF #7-1, at 2, ¶ 13.
[20] 533 U.S. 678 (2001).
[21] ECF #7, at 5.
[22] 28 U.S.C. § 2242.
[23] ECF #7, at 1, n.1.
[24] ECF #8.
[25] *Id*. at 3.
[26] ECF #9-1.

4

own and provide proof of your efforts to ICE."[27] About four months later or about 22 months after having taken Abraha into custody, the government moved to dismiss Abraha's petition pursuant to Fed. R. Civ. P. 12(b)(1).[28] The government included in its motion a renewed objection to the fact that Abraha had named the wrong respondent.[29] Our local rules give a party 30 days to respond to a motion of this sort.[30] Abraha has not opposed the government's motion—presumably choosing not to do so, since he has already obtained the relief he sought through his petition.

### III.

The government seeks to dismiss Abraha's petition because he is no longer in custody. This in turn, according to the government, means the Court no longer has subject matter jurisdiction to hear the petition. Fed. R. Civ. P. 12(b)(1) provides in relevant part:

> **(b) How to Present Defenses.** Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion:
>
> **(1)** lack of subject-matter jurisdiction.

The government's argument derives from Article III, § 2 of the Constitution, which extends judicial power to cases and controversies. With Abraha no longer being "in custody," Abraha's petition no longer presents a case or controversy, according to the government.[31]

---

[27] *Id.* at 3.
[28] ECF #9.
[29] *Id.* at 1, n.1.
[30] Local Rule 7.1(d).
[31] ECF #9, at 2.

5

Abraha petitioned for his release under 28 U.S.C. § 2241, which requires the petitioner to be "in custody." According to the evidence before me, however, ICE released Abraha from custody in June, and he is presumably now living with a relative in Dallas, Texas. By this statutory language and logic, the matter should be moot, and I should therefore recommend that the government's motion to dismiss be granted.

This recommendation accords with the law the Supreme Court sets forth in *Spencer v. Kemna*[32] with one wrinkle I consider below. In *Spencer*, the Court was adjudicating a case involving 28 U.S.C. § 2254, but the same law and logic apply to the statute under which Abraha brought his petition. Both require the petitioner to be "in custody."[33] *Spencer* involved an individual whose parole revocation resulted in incarceration. He was in custody when he filed his petition, but had been released by the time the lower court adjudicated his petition.[34]

> The more substantial question, however, is whether petitioner's subsequent release caused the petition to be moot because it no longer presented a case or controversy under Article III, § 2, of the Constitution. "This case-or-controversy requirement subsists through all stages of federal judicial proceedings, trial and appellate.... The parties must continue to have a 'personal stake in the outcome' of the lawsuit." *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477–478 … (1990). See *also Preiser v. Newkirk*, 422 U.S. 395, 401… (1975). This means that, throughout the litigation, the plaintiff "must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." *Lewis, supra*, at 477 ….
>
> An incarcerated convict's (or a parolee's) challenge to the validity of his conviction always satisfies the case-or-controversy

---

[32] 523 U.S. 1 (1998).
[33] *Compare* 28 U.S.C. §§ 2254(a) and (b)(1), *with* 28 U.S.C. §§ 2241(c)(1)-(4).
[34] *Spencer*, 523 U.S. at 7.

6

> requirement, because the incarceration (or the restriction imposed by the terms of the parole) constitutes a concrete injury, caused by the conviction and redressable by invalidation of the conviction. Once the convict's sentence has expired, however, some concrete and continuing injury other than the now-ended incarceration or parole—some "collateral consequence" of the conviction—must exist if the suit is to be maintained. See, *e.g.*, *Carafas* [*v. LaVallee*, 391 U.S. 234] … at 237–238 …. In recent decades, we have been willing to presume that a wrongful criminal conviction has continuing collateral consequences (or, what is effectively the same, to count collateral consequences that are remote and unlikely to occur). See *Sibron v. New York*, 392 U.S. 40, 55–56 … (1968).[35]

The petitioner in *Spencer* conceded his underlying convictions were lawful. He challenged solely what he believed was the wrongful termination of his parole status. Incarceration would constitute injury in fact, but that key circumstance changes once the petitioner is released upon the completion of the custodial component of his sentence. Nevertheless, the analysis continues to consider possible collateral consequences. The Supreme Court made no presumption as to collateral consequences from the parole revocation itself that would constitute an injury in fact to satisfy the case-or-controversy requirement.[36] The Court also rejected the petitioner's four asserted injuries in fact attributable to his parole revocation.[37] As a result, the Court held that the expiration of the petitioner's sentence caused his petition to be moot as it no longer presented a case or controversy to satisfy Article III's requirement.

The same is true here, particularly since Abraha has protested solely his incarceration at the Northeast Ohio Correctional Center. As in *Spencer*, Abraha's

---

[35] *Id.* at 7-8.
[36] *Id.* at 14.
[37] *Id.* 14-18.

incarceration would constitute "a concrete injury."[38] ICE, however, has already given Abraha the relief he sought by releasing him from custody.[39] Now that he is released and has alleged no collateral consequences nor can any be presumed, Abraha's petition no longer presents a case or controversy sufficient to meet the requirement of Article III. In light of his release, Abraha's claims are moot.[40]

## IV.

Abraha sought to use a petition filed under 28 U.S.C. § 2241 to obtain his release from ICE custody while he awaits execution of the deportation order against him—which he does not challenge. For about a year and half while he remained in custody, the government tried but failed to obtain from the Eritrean government the travel document needed to deport Abraha back to Eritrea. Now that ICE has released Abraha to a relative in Dallas, Texas, Abraha's petition no longer presents an injury in fact to satisfy the case-or-controversy requirement of Article III. For this reason, I recommend that the government's motion to dismiss Abraha's habeas corpus petition be granted. Because I recommend that the government's motion to dismiss the petition be granted, the

---

[38] *Id.* at 7.
[39] *See Conteh v. Barr*, slip op., No. 4:18CV1357, 2019 WL 1440870 (N.D. Ohio Apr. 1, 2019) (finding petitioner's deportation rendered his claim for release from detention moot) (citing *Enazeh v. Davis*, 107 F. App'x 489, 491 (6th Cir. 2004)).
[40] *Carras v. Williams*, 807 F.2d 1286, 1289 (6th Cir. 1986) (holding that a case is moot when the issues presented are no longer "live," when the parties lack a legally cognizable interest in the outcome, or when events occur during the pendency of the litigation that render the court unable to grant the requested relief) (citing *Powell v. McCormack*, 395 U.S. 486, 496 (1969), *S. Pac. Terminal Co. v. Interstate Commerce Comm'n*, 219 U.S. 498, 514 (1911), and 6A J. Moore, J. Lucas & G. Grotheer, MOORE'S FED. PRACTICE ¶ 57.13, at 57-123 to 57-127 and n.11 (1986)).

government's request that the improperly named respondent be dismissed is rendered moot.


Dated: January 2, 2020                           s/ William H. Baughman, Jr.
                                                 United States Magistrate Judge

**Objections**

Any objections to this Report and Recommendation must be filed with the Clerk of Court within 14 days of service of this notice. Failure to file timely objections within the specified time shall constitute a waiver of subsequent review, absent a showing of good cause for such failure.[*]

---

[*] *See* Local Rule 72.3(b); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Am*, 474 U.S. 140 (1985).